2024-2193. When you are ready, Mr. Mazzullo. Thank you, Your Honor, and good morning. This case presents two issues for determination by the Court today. The first is whether the trial court erred in failing to pay the class administrator costs and expenses under Section B of AJA. And second, whether the trial court erred in failing to consider the actions of the relevant federal agencies in making his determination about substantial justification under Section D of AJA. So to go first to the class administrator issue, Section B of AJA doesn't have this substantial justification requirement, but rather it states that the United States shall be liable for expenses, non-taxable expenses, to the same extent as any other party. Historically, this Court, the Court of Federal Claims, and virtually all other courts that have considered the issue have awarded the costs to a class administrator who performs an essential function in the process of administering a class action. But that, I understand, is typically an award that comes out of the sum of money that is charged against the defendant. That is to say, money that would otherwise go to the plaintiffs, that some portion of it is allocated to a class administrator. That is my understanding of the typical way that class actions deal with administrative costs of that sort. That would suggest... Do you know, Your Honor, I think not. That is... I had a class action just a month ago in which that's exactly what happened, and my research suggested to me that that is exactly the way it works in at least in ordinary class action situations. Well, that's the common fund analysis that the Court is talking about, in which the payments, both of attorney's fees and expenses, come out of the judgment as opposed to being paid by the defendant. But in point of fact, and you could take a look at Rule 23, Section G says that the Court may, in its certification order, provide for the payment of both attorney's fees and expenses of the case. And in Subsection H, it provides, of course, for a process whereby those issues may be objected to by the plaintiffs in the case. It doesn't require, and I think we've cited a great number of cases, and certainly including cases involving this very same class administrator, Epic Systems. Counsel, I'll be heading the cart before the horse if we're talking about the class administrator. The question here is substantial justification. I mean, if you lose on that, then you lose on the class administrator. And the law was unsettled during this period of time, and then Accoletta and Athe came along, and the claims court used the language of string of successes, so that there was not a lack of substantial justification for the government's position. If I may, Your Honor, Subsection B of AJA does not address a substantial justification. That's found in Subsection B, an entirely different section. Subsection B, on which we rely, provides that the United States shall be liable to the same extent as any other party. We've cited quite a number of cases in which private parties, as well as the United States, have been held liable for the other expenses. I can tell you that Epic Systems has now withdrawn from acting as a class action administrator as a result of this decision, and is no longer available, even though they had been the class action administrator in a number of cases. So that company, which was appointed by the court, acted at the court's behest, has found itself without any payment whatever as a result of the trial court's decision, which, Your Honor, I think you're correct. I think the trial court probably mixed Section B with Section D of AJA, boy and dog, B and D, and applied the same substantial justification requirement to both. Well, now, is it the case that Epic has not been paid anything for its work to date? My understanding was that there was a contract between Epic and, I suppose it's the representative of class, to do the class administration. And was there not payment made to Epic pursuant to that contract? Payment has not been made, Your Honor. They haven't gotten a dime? That's my understanding, yes, Your Honor. But there was a contract, as I understand it. There was a contract, and there was a court appointment. Well, the court appointment occurs as a matter of course, because you can't have somebody out there freelancing as a claims administrator without any kind of court supervision. But that doesn't mean appointment doesn't mean that you're agreeing that the defendant will pay. Yes. That's the question. Does the defendant pay for the cost of the class administrator? And I do not think that is the normal course of things. It comes out of the judgment, as I understand it, unless the court directs otherwise. Yes, unless the court directs otherwise. Right, which doesn't typically happen, is my understanding. Here the court made no determination, Your Honor. There's no ruling whatever. The court simply didn't make the award. Now, if you had a justification, I think the court, as Judge Lowry indicated, I think the trial court made the mistake of believing that substantial justification applied to the award here. And what we're saying is under subsection B, it does not apply. Moving to substantial justification, the trial court failed to consider the actions of the agencies themselves. There were, I believe, 30 agencies. I've seen 29. I've seen 30. Counselor, those actions of the agency itself, you're talking about pre-suit actions and post-suit actions, correct? I'm sorry. Oh, pre-suit, yes, Your Honor. Pre-suit and post-suit. Yes, and of course. Did it address both? I'm sorry? Did the trial court address both? No, the trial court didn't really address the actions of the agencies at all. And the actions of the agencies were to fail to pay their employees an amount that was pretty obviously due under the Lump-Sum Act. Lump-Sum Act says they are to be paid the amount. It seems to me that the record is pretty robust with discussion and treatment of the issue of post-suit actions. Correct. I agree. And what's missing, Your Honor, is the pre-suit actions. Or put another way, the actions of the agency as opposed to the Justice Department, the actions that gave rise to this lawsuit in the first place. Had the lawsuit not been brought, these employees never had been paid what they were entitled to. Is it your argument that those issues were not addressed at all? Yes. They were not addressed at all by the trial court. And as a result, there was an abuse of discretion here for failure to consider a critical part of the record. The 1985 amendment to AJA specifically included, it overruled prior authority and requires that the court consider the record of the agencies. He simply failed to do that. He talks about the string of successes, as you say, by the Justice Department. And we can go back and forth on that. Suffice to say that in a back pay case, the only entity with the information about who got paid, who the employees are, and who's entitled to payment is the agency. So it's not particularly unusual that the agency would be able to come back with the Justice Department, could come back to the court, and move to dismiss agency A because agency A didn't have any employees who weren't paid. Well, the plaintiff, the class, doesn't know that until the agency comes forward with that information. So that's where that string of successes comes from. But suffice to say that what the court considered was only the string of successes. And that's the abuse of discretion as we see it. We think that the court should reverse and remand on the attorney's fee issue and ask the court to consider in the substantial justification determination whether the- Evidence or argument presented with respect to the pre-suit filing actions that were presented? Whether it was presented, yes, there was discussion in the motion for attorney's fees. Unfortunately, the trial judge here, or the judge making this decision, kind of wasn't the trial judge. He hadn't been involved in any of the prior proceedings. It had bounced through four or five different judges before it got to him. So he didn't have the advantage that trial judges usually have of having sat through the proceedings. I read that, but I didn't find that persuasive. Yeah, well, I say only that, that all he had was the record of the motions that had been made, the fact that there is an OMB regulation. Can you point to the record and show where you raised the actions of the agency that were pre-suit filing? I don't have a page, Your Honor. The motion itself, the motion for attorney's fees and administrative costs is at appendix 140 through about 160. And that's a pretty robust description of the background of all of these issues. And in short, I don't think the trial judge did not know, or could not have known, that the whole action was based on the fact that these agencies had failed to pay what the OMB regulation and the lump sum act required them to pay. The OMB regulation of 1999? That's correct, Your Honor. But that was after the whole set of claims was raised, right? Which goes to the pre-1999 period. How could the agencies necessarily at least have known that the 1999 regulation would be applicable to this pre-1999 period? Well, that in large part was the basis for the settlement of every one of these cases, Your Honor. There would have been no payment. For a variety of reasons. But that doesn't mean that because the government ultimately settled a small percentage of the claims that that means that the government was acknowledging that the agencies acted improperly and not anticipating that the 1999 regulations would require payment above and beyond the amount that the employees were being paid when they left. Well, agreed, Your Honor. The lump sum act itself, however, said the employee, when he leaves, is to be paid the amount for unused vacation that he would have received had he continued to work for that period of time. He has 60 days. He gets paid for those 60 days at the rate that he would have received if he'd stayed on the job. Counsel, I would note that the statute reads, talking about whether the action of the United States was reasonable, not necessarily the agency. Your interim rebuttal time was just Judge Bryson has a further comment. Thank you, Your Honor. I would say, Your Honor, the statute itself, EJ itself, says the record of the agency is to be taken into account. We'll give you three minutes for rebuttal. Thank you, Your Honor. Mr. Cowman. Thank you, Your Honor. May it please the Court. The class has failed to show that the trial court abused its discretion in denying EJ fees and concluding that the government's position was substantially justified. I think that the statutory text of EJ illustrates the fundamental issues with the class's argument. EJ says, whether or not the position of the United States was substantially justified shall be determined on the basis of the record, including the record with respect to the action or failure to act by the agency upon which the civil action is based. Now, here, the class does not identify any record by any agency that the trial court failed to consider. That is because there was no agency position, policy, or personnel decision to consider. The class only points to the fact that the government settled with a small number of plaintiffs with mistakes in their supplemental lump sum payments. But that falls under EJ's prevailing party analysis, not the substantial justification analysis. Here, the trial court correctly looked at the position of the United States as a whole, including the fact that the United States demonstrated that, at the agency level, only 1,103 out of millions of government employees across the vast majority of government agencies had errors in their supplemental lump sum payments, and that the government had a string of significant wins in litigation. And taking all this together, determined that the position of the United States was substantially justified. And in responding to a few things that my friend on the other side said, I think it's important to note that the class did not identify any piece of the record before the agency that the trial court did not consider. The trial court articulated the standard correctly. The trial court acknowledged that it was looking at the administrative. Did the trial court consider pre-suit actions? Yes, it did. Go ahead. This is at Appendix 8. The trial court noted that the United States had demonstrated that some agencies were either not subject to the relevant law or had already paid their former employees correctly. The government had admitted that several other agencies had already made. What page are you reading? Appendix 8. 8? Yes. And basically, the trial court acknowledged that the United States had paid the vast majority of the potential claimants in this class correctly. Well, OK, but if you could respond with specificity to Judge Raina's question, I'd be interested in the answer as well. Sure. Where exactly on page 8 are you focusing on to demonstrate that the trial judge actually considered pre-litigation agency conduct? Sure. So the particular lines of page 8. Yeah. So if you're looking at, this is the third bullet down. It says accurate payments. And it goes on to show that the United States made accurate payments. Made several of the agencies made accurate payments. Right. The result, however, in other agencies appears to be that they were inaccurate. Well, actually, even within the same agency, there was no one agency that made all inaccurate payments. Well, OK, but the question is, did this judge focus on pre-litigation agency conduct? And you say, oh, yes. And you point me to something that says that several of the agencies made the proper payments. That does not, to me, translate to the judge focused on the pre-litigation conduct of the agencies. Sure. Where, if anywhere, does the judge address that issue? Well, so that issue applies equally to the pre-litigation conduct as well as the litigation position. Because there was no records before the agency for the trial court to consider. So the only way for the trial court to consider what happened at the agency level was by looking at what happened during the litigation. And during the litigation, the government showed that the overwhelming majority of agencies paid the correct supplemental lump sum payments. And that impacts the agency level just as well as it does the litigation level. Your argument seems to be contrary to the statute, which actually speaks to pre-suit conduct and its litigation position. It doesn't conflate the two. Right. But there was no- You still haven't pointed, or I haven't heard you point to, from the record, do we find where the pre-suit conduct of the agency was addressed? So that, it's on page A. The trial court recognizes first, and this is at the top line of the second page. If we don't find it on page A, can we assume it's not in the record at all? I mean, let's take, even assuming it's not in the record at all, that there was no position from any of these agencies that the trial court could address at all. And that's your argument. What did the trial court find? The trial court acknowledged the plaintiff's argument that because that 23 different agencies and the plaintiff's words had no basis in fact or law to pay any of the required lump sum payments. The trial court said, moving on, to say that plaintiffs seem to also maintain that by virtue of the plaintiffs being a prevailing party, the United States could not be substantially justified. And it went on to the top of that third paragraph to say, although success or failure on the merits is not always determinative, in cases such as this one involving multiple decisions, multiple issues and decisions, a string of losses can be indicative and even more so a string of successes. So the trial court acknowledged plaintiff's argument, which was that the agencies failed to properly pay lump sum payments correctly to a small number of individuals, and said that this basically equates to an argument that they win because they succeeded on the merits. And continued to say that although success from the merits is not always determinative, here there was a string of wins by the government that ultimately substantially justified its position. And to the extent that we're searching for some kind of sort of agency record that the trial court failed to consider, there was none here. The plaintiffs don't allege that they ever raised these issues before an agency. They don't allege that there was any record before these agencies that the trial court failed to consider. And one thing that my friend on the other side said was that only the agencies had access to these records. But a supplemental lump sum payment calculation can be made based on the records that an individual has. The only information you need is the amount of leave that you had at the time you separated, and your pay rate, and whether there was an increase in premium pay the following year. As I understand it, the Federal Personnel Manual at the time, before the 1999 regulation was instituted, suggested that you didn't get these add-ons. Is that right? That you got paid at the rate that you were being paid on the day you separated? Right, so that was OPM's policy. And OPM's policy specifically was that the lump sum payment covers the period over which an employee's annual leave would have carried him if he had actually used it, based on the pay rate he was receiving immediately prior to the date he is considering it. That was my... Yeah. That's what I understood. Now, do you think that the fact that the agencies, at least in the contested cases, followed that OPM directive is enough to render their conduct, the conduct of the agencies, reasonable? Substantially justified? I think, yes, Your Honor. I think that goes to show the way that this law was unsettled before the regulations were promulgated in 1999, for the reasons that we discussed in our brief. But there had been no... There was no sort of like determinative fact that these people must be paid supplemental lump sum payments until those regulations were promulgated in 1999. Suppose that the action had been brought only by the thousand or so employees who ended up, I gather, I gather that's roughly the number, that ended up getting a supplemental award in this case, and those had been the only named plaintiffs in the case, or the only members of the class. Would you think that under those circumstances, that the government was substantially justified in the position that it took, if it lost with respect to every single one of the employees? I think that would certainly be a more difficult case for the government to show substantial justification. But I think that the trial judge would need to weigh that against the litigation success of the government and where it pared down the case in other ways. Like, for example, here, as to entitlement to interest. And I think that that hypothetical kind of helps show sort of the difference in this case, which is where this was a class action involving almost every federal agency except for the 17, the 18 that were previously settled. And so here, when we're looking at the position of the United States as a whole, as EJA instructs, when we're looking at the agency level as a trial court acknowledged, we can see that where we were faced with a potential situation where this could be millions of claimants, it ended up only being 1,000 employees who the government settled with. What about the argument for the class administrators being paid from the government under subsection B? Right, Your Honor. So the problem here is that the class did not raise this argument before the trial court. The class didn't argue at all that the class administrator was separately entitled to fees other than through D. And in fact, with respect to subsection B, the class had already raised a separate motion for fees under subsection B, which the trial court denied. And the docket entry for this is 436 and appendix 47. And so this is just not an issue that the class raised to the trial court. So the trial court had no opportunity to consider class administrator expenses under any other part of the case. Setting that aside, what do you think is the proper way to address the question of fees for the class administrator in a class action against the government in which a B request is made? I think that there's no... in which a B request is made. There's... I think that that question, again, I don't really have a position on that because it wasn't presented here. Well, if we find that it was presented, then I'd be really curious to know what the government's position is. Do you understand what the typical practice is in class actions with respect to class administrators? This comes up all the time. Sure. I think I do at a high level. It typically gets paid out of the common fund, which comes out of the amount that gets paid out to the class. Right. And so I don't see a way in which... And B, which incorporates A, is intended to put the government in the same position with respect to its obligations as a private party would have in a similar situation, correct? Correct. Okay. So then we look to what would happen in a typical private setting as to the class administrator fee. And if we conclude that that is paid out of the common fund, then the government has no obligation in this case. Is that... do you think that's right? I think that's right, Your Honor. And my understanding is that's what the trial court concluded as well. And is there any indication in the court's opinion as to where the trial court reached that conclusion? No, because it was in a separate opinion, Your Honor. Okay, but where... show me where in that separate opinion the trial court answered that question. Oh, sorry. That separate opinion is not in the record, but it's docket 436 in this case. Okay. So that's in the record, docket 436. All right. Good. But, yeah, to sum up, the class didn't raise the B issue. And for the reasons that we discussed, the common fund isn't something that pays out to the government. The class doesn't suggest a reason that the government would be on the hook for that. Since this isn't a common fund case, this is not a common fund case, who normally pays for the other costs in situations like this? In situations like this, it would be the class. The class had a contract with the class counsel, or excuse me, with the class administrator, in which they agreed to pay the class administrator. So it would be the class counsel. And if there are no further questions, we respectfully request that the Court affirm the Court of Federal Claims decision. Thank you, Mr. Cowman. Mr. Musil, you have three minutes. Thank you, Your Honor. It'll take even less than that. First of all, this case did not involve millions of employees. There was an Archuleta case. There was an Athe case. This case involved 30 agencies. They didn't employ millions. In fact, many of those agencies were very small. I don't know the exact number, but that's another factual error that the trial judge made. And he made that, I think, because he sort of incorporated the Athe decision and maybe even the Archuleta decision. I will point out in the Archuleta decision, the fees and expenses were paid by the United States. They weren't paid out of a common fund. Second, as to the common fund, that is exactly the argument that Kandel made at the trial court. The trial court found that common fund did not apply in this case and had it. Note that the judgment here is $264,000 approximately. The class administrator had expended and I think requested several hundred thousand more than that amount. So the fund couldn't have paid that amount. Third, counsel keeps referencing the record. But this court in Chu v. United States and the Supreme Court in Commissioner v. Gene, both individual cases did not go to an administrative record, did not say you have to have an administrative record as in an APA case in order to have the trial court look at what the agency did. But rather what those cases and many others that we cite in our brief said is the trial court must look at, why did this suit have to be brought in the first place? And that is to look at the action of the agency, not some official position of the agency, but just what did the agency do vis-a-vis this individual. And with that, I thank the court. Let me ask one further question. Certainly. This goes back to the argument that Mr. Kalman was making right at the outset. The proportionality problem. Suppose, contrary to fact, that at the end of the litigation, there were only seven individuals who it turns out were underpaid, even according to the plaintiff's theory. But they were underpaid and there was a total of, let's say, $1,000 total to those seven individuals. Would the error of the agency and the government in litigating that be sufficient to justify the payment of attorney's fees, in your view, and the payment of a class administrator? Obviously, I'll start by saying it depends on the facts. But as to the... Well, what facts does it depend on? That's my question. Right. As to those individuals, I would say, first of all, the government looks at this from the point of view of the agency and the broad workforce. But as to each individual, that person didn't get paid. So think of it as an individual case. If only Mr. Kandel had brought this as an individual case and had received a full payment of the amount that he was due, would it be said that under EJIA, even though the purpose of EJIA was to allow individuals to vindicate rights that they might otherwise not be able to vindicate, even under that purpose, should Mr. Kandel not have brought the lawsuit because there just wasn't enough money to worry about? I don't think that's what he just said. On the other side of that coin is, should the government be required to pay, let's say, several hundred thousand dollars in legal fees for a case that was only worth a thousand dollars? It depends on how the government litigated it. Why shouldn't the government have paid those seven individuals and disposed of the case, rather than, as in our case, making them wait 14 years, Your Honor, to get paid? Is the size of the shrinking classes that are in the course of litigation, isn't that evidence that goes to who's a prevailing party? Yes, and it's also evidence, Your Honor, that goes to the question of how much should the attorney's fee be? Courts will often say, we won't pay for all of these actions. Say, the motions that the government prevail on, the court might not pay for those. But the court normally does not say, the Justice Department won a bunch of motions, so I don't care how unjustified those agencies were in not paying their employees and in resisting this case for 14 years, I'm just not going to consider that. The only thing I'll consider is whether the Justice Department- And that's going to go to substantially justified arguments. Yeah, so it all fits into the substantially justified argument. And all we're saying here is that part of that analysis has to be what the agencies did in the first place. That's what the trial court failed to do here, and that's why we think it should be remanded, Your Honor. Thank you to both counsel for an excellent presentation. The case is submitted.